**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| MONICA SEGUI, individually | : | |
| and as Administrator Ad | : | |
| Prosequendeum of the Estate of | : | |
| JANIO PEDRO SALINAS, | : | |
| deceased, | : | |
|      Plaintiff, | : | CIVIL ACTION |
| | : | No. 15-951 |
|      v. | : | |
| | : | |
| CSC SUGAR LLC, | : | |
| RANDSTADT NORTH | : | |
| AMERICA, L.P., WESTSIDE | : | |
| WELDING, INC., and XYZ | : | |
| COMPANY, INC., 1-25, | : | |
|      Defendants. | : | |

**MEMORANDUM**

**August 6, 2015**                                                                                          **Anita B. Brody, J.**

Plaintiff Monica Segui ("Segui") brings this action individually and as Administrator Ad

Prosequendeum of the estate of her deceased husband, Janio Pedro Salinas ("Salinas"), against

Defendants CSC Sugar, LLC ("CSC"), Randstad North America, L.P. ("Randstad"), Westside

Welding, Inc. ("Westside"), and ABC Construction Co., Inc. ("ABC").  This action arises out of

events at a CSC raw sugar handling facility that resulted in Salinas' death by asphyxiation.  I

exercise jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a).  Before me is Randstad's

Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  For the reasons

discussed below, I will grant Randstad's motion.

## I.      BACKGROUND

Salinas, the decedent, was employed by Randstad, which provides staffers to various clients.

Compl. ¶ 11, ECF No. 1.  Randstad provided workers, including Salinas, to CSC, a bulk supplier of raw sugar.  *Id.* ¶¶ 11, 13.  Salinas worked as a fork lift operator at CSC's industrial facility in Fairless Hills, Pennsylvania.  *Id.* ¶¶ 11–12.  Inside the CSC facility is a large free-standing industrial hopper with a holding capacity of 6-8 cubic yards of bulk raw sugar.  *Id.* ¶¶ 13, 19. The top of the hopper was fitted with a safety grate or screen.  *Id.* ¶ 16.  Because sugar often clogged the hopper while the safety grate was in place, CSC removed the grate.  *Id.* ¶¶ 17, 41. On February 25, 2013, after CSC removed the grate, Salinas fell into the hopper during the course of his work.  *Id.* ¶ 16–17, 19.  Buried alive in raw sugar, Salinas died of asphyxiation.  *Id.* ¶ 19.

## II.   LEGAL STANDARD

In deciding a motion to dismiss under Rule 12(b)(6), a court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."  *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (internal quotation marks omitted).

To survive dismissal, a complaint must allege facts sufficient to "raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Rather, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Id.* (internal quotation marks omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*

"As a general matter, a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings.  However, an exception to the general rule is that a document integral to or explicitly relied upon in the complaint may be considered . . . ."  *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (emphasis omitted) (citations omitted) (internal quotation marks omitted).  Thus, a court may "consider matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case."  *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994).  Further, "a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document."  *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

## III.    DISCUSSION

Randstad moves to dismiss this lawsuit on the grounds that as Salinas' employer, it is immune from suit pursuant to the Pennsylvania Workers' Compensation Act (the "Pennsylvania WCA").  *See* 77 P.S. § 481.  Segui counters that New Jersey's Workers' Compensation Act (the "New Jersey WCA"), not the Pennsylvania WCA, applies, and that the New Jersey law's "intentional wrong" exception permits this lawsuit against Randstad.  *See* N.J.S.A. § 34:15-8.

To determine the applicable workers' compensation law, the Court must conduct a choice-of-law analysis.  "Under the *Erie* doctrine, federal courts sitting in diversity apply state substantive law and federal procedural law."  *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996).  Choice-of-law rules are considered substantive law; therefore, a federal court looks to state law for choice-of-law rules.  *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941).  A federal court exercising diversity jurisdiction over a claim applies the choice-of-law rules of the state of the forum.  *Berg Chilling Sys., Inc. v. Hull Corp.*, 435 F.3d 455, 462 (3d

Cir. 2006). Therefore, Pennsylvania's choice-of-law rules control.

Under Pennsylvania law, "[b]efore a choice of law question arises, there must first be a true conflict between the potentially applicable bodies of law." *Huber v. Taylor*, 469 F.3d 67, 74 (3d Cir. 2006). "If two jurisdictions' laws are the same, then there is no *conflict* at all, and a choice of law analysis is unnecessary." *Hammersmith v. TIG Ins. Co.*, 480 F.3d 220, 230 (3d Cir. 2007); *see Pac. Employers Ins. Co. v. Global Reinsurance Corp. of Am.*, 693 F.3d 417, 432 (3d Cir. 2012) (quoting *Hammersmith*). Even where two jurisdictions' laws are not the same, "[a]ccording to conflict[] of laws principles, where the laws of the two jurisdictions would produce the same result on the particular issue presented, there is a 'false conflict,' and the Court should avoid the choice-of-law question." *Berg Chilling*, 435 F.3d at 462; *see Hammersmith*, 480 F.3d at 229–30.

Whether the Court applies Pennsylvania or New Jersey law, the outcome would be the same because both states' workers' compensation laws bar this action again Randstad. Thus, a false conflict exists and a choice-of-law analysis is unnecessary.

The Pennsylvania WCA provides:

> The liability of an employer under this act shall be exclusive and in place of any and all other liability to such employe[e]s, his legal representative, husband or wife, parents, dependents, next of kin or anyone otherwise entitled to damages in any action at law or otherwise on account of any injury or death as defined in section 301(c)(1) and (2) . . . .

77 P.S. § 481(a). This provision "is a version of the historical *quid pro quo* that employers received in return for being subjected to a statutory, no-fault system of compensation for worker injuries." *Poyser v. Newman & Co.*, 522 A.2d 548, 550 (Pa. 1987). Thus, the Pennsylvania WCA "deprives [Pennsylvania courts] of jurisdiction of common law actions in

tort for negligence against employers."[1]  *LeFlar v. Gulf Creek Indus. Park No. 2*, 515 A.2d 875,

879 (Pa. 1986).

Because Segui alleges that Randstad was Salinas' employer and that Salinas' death

occurred during the course of his employment, the Pennsylvania WCA bars this lawsuit against

Randstad.

The New Jersey WCA provides:

> If an injury or death is compensable under this article, a person shall not be liable
> at common law or otherwise on account of such injury or death for any act or
> omission occurring while such person was in the same employ as the person
> injured or killed, except for intentional wrong.

N.J.S.A. § 34:15-8.  Like the Pennsylvania WCA, the New Jersey WCA "involved a

historic trade-off whereby employees relinquished their right to pursue common-law remedies in

exchange for automatic entitlement to certain, but reduced, benefits whenever they suffered

injuries by accident arising out of and in the course of employment."  *Millison v. E.I. du Pont de*

*Nemours & Co.*, 501 A.2d 505, 512 (N.J. 1985).  Unlike the Pennsylvania WCA, however, the

New Jersey WCA includes an exception to the exclusivity provision for "intentional wrong."

N.J.S.A. § 34:15-8.  The New Jersey Supreme Court has interpreted this exception narrowly.

*See Millison*, 501 A.2d at 513 (rejecting an overbroad interpretation of "intentional wrong").

"In order for an employer's act to lose the cloak of immunity of N.J.S.A. 34:15-8, two

conditions must be satisfied: (1) the employer must know that his actions are substantially certain

to result in injury or death to the employee, and (2) the resulting injury and the circumstances of

its infliction on the worker must be (a) more than a fact of life of industrial employment and (b)

---

[1] In *Martin v. Lancaster Battery Co.*, the Pennsylvania Supreme Court recognized a narrow exception to
the Pennsylvania WCA's exclusivity provision.  *See* 606 A.2d 444, 447 (Pa. 1992) (allowing action
against employer where employee alleged "fraudulent misrepresentation on the part of his employer as
causing the delay which aggravated a work-related injury" and where employee was "not seeking
compensation for the work-related injury itself in this action").  Segui makes no attempt to cast her claims
under the *Martin* exception.

plainly beyond anything the Legislature intended the [New Jersey WCA] to immunize." *Laidlow v. Hariton Mach. Co.*, 790 A.2d 884, 894 (N.J. 2002) (citing *Millison*).  The New Jersey Supreme Court has applied the "intentional wrong" exception in cases involving "the employer's affirmative action to remove a safety device from a machine, prior OSHA citations, deliberate deceit regarding the condition of the workplace, machine, or, in the case of *Millison*, the employee's medical condition, knowledge of prior injury or accidents, and previous complaints from employees." *Van Dunk v. Reckson Assocs. Realty Corp.*, 45 A.3d 965, 978 (N.J. 2012).  In contrast to those situations, "the mere knowledge and appreciation of a risk—even the strong probability of a risk—will come up short of the 'substantial certainty' needed to find an intentional wrong resulting in avoidance of the exclusive-remedy bar of the compensation statute." *Millison*, 501 A.2d at 514–15 (ruling that the New Jersey WCA precluded suit against employer for employees' initial contraction of asbestos-related diseases where employer knew it exposed employees to asbestos).

Because Segui fails to plead sufficient facts to show that the New Jersey WCA's "intentional wrong" exception applies, the Act bars this lawsuit against Randstad.  The New Jersey Supreme Court has held that an employer's knowledge of workplace dangers does not overcome the exclusivity provision of the Act.  *Van Dunk*, 45 A.3d at 978 ("Mere knowledge by an employer that a workplace is dangerous does not equate to an intentional wrong."); *Millison*, 501 A.2d at 514–15.  Segui alleges that CSC, not Randstad, "intentionally modified the subject machine by bypassing safety systems."  Compl. ¶ 41.  As for Randstad, Segui alleges only that it "knew or should have known" that CSC removed the safety grate and that "it was virtually certain that [Salinas] would be injured on the subject machine."  *Id.*; *see also id.* ¶¶ 18,[2] 40.

---

[2] "Defendants knew, or in the exercise of reasonable care should have known, of the danger created by the clogging of the bulk sugar in the hopper and the removal of the safety grating, yet failed to warn the

Segui also argues that in Paragraph 17 of her Complaint, she alleges that Randstad took actions related to the removal of the safety grate as a contractor of CSC.  Paragraph 17 provides: "Prior to February 25, 2013, CSC SUGAR, L.L.C. management personnel, its contractors or other authorized personnel caused the safety grating to be removed from the top of the hopper because it was slowing production."  *Id.* ¶ 17.  This vague reference to CSC's "contractors" is insufficient to raise a plausible claim against Randstad.  *See Iqbal*, 556 U.S. at 678.  Segui fails to allege that Randstad took any actions related to the grate's removal, let alone that Randstad knew that its actions were substantially certain to result in injury or death to Salinas.  *Cf. Laidlow*, 790 A.2d at 896–98 (permitting plaintiff to pursue common-law action where he alleged that his *employer* removed a safety device with the knowledge that its action was substantially certain to result in injury).  Segui's allegations fall short of the standard established by the New Jersey Supreme Court for overcoming New Jersey's exclusivity provision.

Based on the facts pled in the Complaint, a false conflict exists because both the Pennsylvania WCA and the New Jersey WCA bar Segui's lawsuit against Randstad.[3]

---

plaintiff of any danger."  Compl. ¶ 18.

[3]     If a true conflict between the two laws does exist, Pennsylvania's choice-of-law analysis compels the conclusion that Pennsylvania law applies.  Pennsylvania's approach requires a court to "use a methodology that combines the approaches of the *Restatement (Second) of Conflict[] of Law[s]* and governmental interest analysis."  *Pac. Employers Ins. Co.*, 693 F.3d at 436.  This inquiry requires consideration of which state has the "most significant contacts or relationships with the particular issue." *Hammersmith*, 480 F.3d at 230 (internal quotation marks omitted).  A court "must weigh the contacts on a qualitative scale according to the policies and interests underlying the particular issue." *Pac. Employers Ins. Co.*, 693 F.3d at 437.  For tort actions, the Restatement enumerates four contacts to consider: "(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered."  Restatement (Second) of Conflict of Laws § 145(2) (1971).

        Here, the most significant contacts occurred in Pennsylvania because Salinas' death and the conduct that caused his death both occurred in Pennsylvania, and the parties' relationship centered on Salinas' work assignment in Pennsylvania.  Both New Jersey and Pennsylvania share a similar policy rationale for their workers' compensation laws—providing certainty to employees and employers when workplace accidents occur.  The interests and contacts relevant to this case weigh in favor of applying Pennsylvania law.  As discussed above, Pennsylvania law bars this lawsuit against Randstad.

## IV.    CONCLUSION

For the reasons discussed above, Randstad's Motion to Dismiss will be granted.

s/Anita B. Brody

_____

ANITA B. BRODY, J.